1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                        DISTRICT OF NEVADA
8                              * * *
9   BEHRINGER HARVARD LAKE TAHOE,        Case No. 3:13-cv-00057-MMD-PAL
    LLC,
10
                         Plaintiff,                    ORDER
11
       v.                                 (Def.'s Motion to Transfer – dkt. no. 3)
12
    BANK OF AMERICA, N.A, et al.,
13
                         Defendants.
14

15  **I.     SUMMARY**

16          Before the Court is Defendant Bank of America, N.A.'s ("BOA") Motion to Transfer

17  Venue to the United States District Court for the Northern District of Texas, Dallas

18  Division. (Dkt. no. 3.) For the reasons set forth below, BOA's Motion is granted.

19  **II.    BACKGROUND**

20          On January 4, 2013, Plaintiff Behringer Harvard Lake Tahoe, LLC ("BHLT")

21  brought this action against BOA in state court arising out of BOA's foreclosure of a

22  property in possession of BHLT. (*See* Compl., dkt. no. 1-1 ("the Nevada Action").) In its

23  Complaint, BHLT alleges that in March 2007, it entered into a loan agreement with BOA

24  to secure a $9.4 million loan to purchase certain property located in Douglas County,

25  Nevada ("the Property"). (Compl. at ¶ 5.) BHLT defaulted on its loan obligations, and

26  BOA purchased the Property in March 2012 in a foreclosure sale for $5,518,171.

27  (Compl. at ¶ 7.)  Although NRS § 40.455 prevents a lender from bringing an action for a

28  deficiency judgment after 6 months of a foreclosure sale, BHLT alleges that BOA sought

1   a plan to resolve the deficiency on October 30, 2012, more than seven months after the

2   foreclosure sale. (Compl. at ¶ 9.) BHLT now asserts a declaratory relief claim against

3   BOA seeking to declare that BOA is not entitled to collect on a deficiency judgment

4   against it. (*Id.* at ¶ 13.)

5           On January 24, 2013, BHLT filed its First Amended Complaint ("FAC") in state

6   court, adding various additional allegations as well as claims for breach of contract and

7   tortious interference with prospective business relations. (*See* FAC, dkt. no. 1-2.)

8   Specifically, BHLT explained that pursuant to a Seventh Loan Amendment Agreement

9   (the "Seventh Amendment"), dated June 2, 2010, BHLT was obligated to provide BOA

10  with evidence as of June 2, 2011, that, based on a new appraisal, the outstanding

11  balance of its loan obligations were not greater than 85% of the Property's value. (*See*

12  *id.* at ¶ 7.) The Seventh Amendment required that BOA engage a third party appraiser to

13  prepare the appraisal. (*Id.* at ¶ 8.)  If the appraisal determined that the outstanding

14  principal value exceeded 85% of the Property, BHLT would be obligated to immediately

15  repay enough of its obligations to ensure that its principal balance fell below 85% of the

16  Property's value. (*Id.* at ¶ 9.) BHLT alleges that BOA secured an "incredibly" low

17  appraisal in 2011 that placed the value of the property at 70% lower than its valuation

18  just two years earlier, thereby forcing BHLT into premature payments of its loan

19  obligations. (*Id.* at ¶¶ 10–11.) BOA then failed to turn over the appraisal, instituted

20  foreclosure proceedings, and then sought a deficiency judgment against BHLT for the

21  remainder of the unpaid balance. (*See id.* at ¶¶ 18–20.)

22          On February 5, 2013, BOA timely removed the suit to this Court pursuant to 28

23  U.S.C. § 1332. (*See* dkt. no. 1.) A day earlier, on February 4, 2013, BOA filed suit

24  against BHLT and the Guarantors of BHLT's loan, Behringer Harvard Strategic

25  Opportunity Fund I, LP ("STRAT I") and Behringer Harvard Strategic Opportunity Fund II,

26  LP ("STRAT II"), in the Northern District of Texas seeking a deficiency from these

27  defendants for the same loan on the Property. (*See* Compl., *Bank of Am. v. Behringer*

28  ///

*Harvard Lake Tahoe*, No. 3:13-cv-316-MMD-VPC (D. Nev. filed Feb. 4, 2013), ECF. No. 1 ("the Texas Action").) BHLT's Guarantors are both Texas entities.

On the same day that it initiated the Texas Action, BOA moved this Court to transfer the Nevada Action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), arguing that the proper venue for hearing this suit is in Texas. BHLT opposed the transfer on March 8, 2013 (dkt. no. 14), and filed its Second Amended Complaint concurrently with its opposition to the Motion, adding a number of additional defendants and allegations. (Second Amended Compl. ("SAC"), dkt. no. 13.) The SAC added Defendants Cushman & Wakefield of Colorado, Inc. ("Cushman") and Christopher R. Donaldson (collectively "the Appraiser Defendants") to the suit, the parties it alleges were responsible for the fraudulently low appraisal of the Property that triggered the Seventh Amendment's immediate payment obligation. (SAC at ¶¶ 14–15, 25–27.) The SAC added as causes of action civil conspiracy, wrongful foreclosure, and breach of good faith and fair dealing. (*See* SAC at ¶¶ 39–70.)

On June 12, 2013, Judge A. Joe Fish of the Northern District of Texas ordered the Texas Action transferred to the District of Nevada pursuant to the first-to-file rule, which provides that a case with substantial overlap to an another earlier-filed case be transferred to that court for adjudication. The parties noted in a joint status report that this transfer does not materially affect the pending Motion to Transfer, which the Court now addresses. (*See* dkt. no. 56.)

III.     LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district or division where it might have been brought." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005).  "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (citations and quotation marks omitted).

///

Motions to transfer venue are considered on "an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted). "The statute has two requirements on its face: (1) that the district to which defendants seek to have the action transferred is one in which the action might have been brought, and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice." *Amazon*, 404 F. Supp. 2d at 1259 (citation and quotation marks omitted).  The burden of proof is on the moving party.  *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007).

Further, "[a] motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones*, 211 F.3d at 498.  "For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  *Id.* at 498-99.

IV.   **DISCUSSION**

A.   **Amendment of the Complaint**

BHLT's primary argument against transfer relates to its SAC. It argues that a transfer to Texas would eliminate its ability to proceed against the Appraiser Defendants because the Texas court lacks personal jurisdiction over these newly added defendants. However, the Court notes at the outset that in order to transfer venue to the Northern District of Texas, "it must appear that the conditions necessary to satisfy this special venue provision existed *on the date the action was commenced.*" *Illinois Scientific Developments, Inc. v. Sirica*, 410 F.2d 237, 238 (D.C. Cir. 1968) (emphasis added) (*citing Hoffman v. Blaski*, 363 U.S. 335 (1960)). Therefore, the lack of contacts with

4

Texas are irrelevant to the inquiry before the Court, since BOA's Motion to Transfer concerns the Texas courts' ability to receive this action as originally commenced.

Nevertheless, a district court is "not required to confine its venue consideration to the facts as they existed at the time of the complaint." *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir. 1982) (holding that venue was proper in the receiving state notwithstanding the presence of various out-of-state defendants over whom the exercise of jurisdiction would have been improper, because those defendants settled before the transfer to the state was effectuated). Unlike the situation in *In re Fine Paper Antitrust Litigation*, where "the action 'might have been brought' in the [receiving state] as to all of the parties remaining in the case," the action here cannot be brought as to all of the parties due to the Appraiser Defendants' apparent lack of contacts with Texas that would support *in personam* jurisdiction. However, this fact is not dispositive of BOA's Motion, as the Complaint's amendment appears to have been a tactic by BHLT to shield this suit from transfer to Texas. The SAC was filed on the same day that BHLT responded to BOA's Motion to Transfer, and adds defendants and allegations that it likely knew about before the case's removal.  Although the Court does not now speculate about the viability of BHLT's claims against the newly added Appraiser Defendants, the circumstances of their addition coupled with BHLT's early-filed declaratory relief action raise suspicions of potential forum-shopping.

## B.    Choice of Law

Turning to the eight factors that govern motions to transfer, a recounting of the main facts that BOA in support of its Motion is warranted:

1. All relevant agreements giving rise to this dispute were negotiated and executed in Texas, at BOA's Dallas offices.

2. The parties have few contacts with Nevada, except for BHLT's incorporation in Nevada.

///

///

5

3. The Note and Guaranty Agreements specify that Texas law governs all disputes between the parties, and that BHLT and its guarantors must submit to Texas jurisdiction.

4. BHLT's guarantors are Texas entities.

Under the circumstances present here, where many of the venue factors are inconclusive, the Court considers the choice of law to be the most important consideration in determining the merits of BOA's Motion. A federal court applies the choice-of-law rules of the state courts in the district where it sits. *Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 496 (1941). Nevada's choice-of-law principles permit parties "within broad limits to choose the law that will determine the validity and effect of their contract." *Sievers v. Diversified Mtg. Investors,* 95 Nev. 811, 815 (1979). So long as the agreement has a substantial relation with the transaction, and is not contrary to the public policy of the forum, than that choice is valid. *Id.*

The Note entered into and executed between BHLT and BOA provided that BHLT would "submit (and waive all rights to object) to non-exclusive personal jurisdiction of any state or federal court sitting in Dallas, Texas, and venue in the city or county in which payment is to be made as specified in <u>Section 1</u> of this Note." (Dkt. no. 3, exh. 2 at § 11.) The Note further provided, in all capital letters, that "[t]his Note, and its validity, enforcement and interpretation, shall be governed by Texas law (without regard to any conflict of laws principles) and applicable United States federal law." (*Id.*) BHLT's loan was supported by a deed of trust ("Deed of Trust"), which stated that BHLT "hereby irrevocably submits generally and unconditionally. . . to the non-exclusive jurisdiction of any state court, or any United States federal court, sitting in Dallas, Texas, and to the non-exclusive jurisdiction of any state court or any United States federal court sitting in the state in which any of the Property is located . . . ." (Dkt. no. 15, exh. B-2 at § 6.8). The parties' dispute as to which of these documents controls the choice-of-law inquiry is answered by *Key Bank of Alaska v. Donnels*, 787 P.2d 383, 384 (Nev. 1990). There, the Nevada Supreme Court ruled that "an action for a deficiency after partial satisfaction

1    through sale of the security is an action on the debt" that arises out of the promissory

2    note, not the deed of trust that secures the debt obligation. *Id.* For that reason, it ruled

3    that the choice-of-law clause embodied in the promissory note of a loan controlled. The

4    same principle applies here.

5         BHLT argues that *Donnels* is inapplicable, because the Nevada Supreme Court

6    failed to consider that applying the choice-of-law clause would be inimical to Nevada

7    public policy as outlined in NRS § 40.453.[1] Since § 40.453 expressly forbids as against

8    public policy waiver of any rights relating to the sale of real property, the choice of Texas

9    law cannot be sustained under the exception to Nevada's choice-of-law rules discussed

10   above. But this argument cannot stand. BHLT argues that because Texas limits

11   deficiency judgment actions with a two-year statute of limitations, instead of Nevada's

12   six-month statute of limitations, Texas in effect has waived a right guaranteed to

13   borrowers in Nevada. First, it is not clear what right Texas waives that is afforded to

14   borrowers like BHLT under Nevada law. Is it the right to be free from deficiency

15   judgments after six months? Or the right to have some reasonable statute of limitations

16   imposed on deficiency judgments? Section 40.453 would bar a choice-of-law clause that

17   selects a forum that waives the former, but not on the latter. Second, BHLT's expansive

18   interpretation of § 40.453 — an interpretation that the *Donnels* Court conspicuously failed

19   to mention or cite to — "would lead to an absurd result," namely that "such things as

20   arbitration agreements, forum selection clauses and choice-of-law provisions would be

21   unenforceable." *Lowe Enterprises Residential Partners, L.P. v. Eighth Judicial Dist.*

22   *Court ex rel. Cnty. of Clark*, 40 P.3d 405, 412 (Nev. 2002).  It cannot be a proper reading

23   of § 40.453 that a choice-of-law provision that selects for a state whose deficiency

24   judgment laws are identical to Nevada's in all but one slightly weaker respect would be

25   _____

26   [1]NRS § 40.453 states as follows: "It is hereby declared by the Legislature to be
     against public policy for any document relating to the sale of real property to contain any
27   provision whereby a mortgagor or the grantor of a deed of trust or a guarantor or surety
     of the indebtedness secured thereby, waives any right secured to the person by the laws
28   of this state."

7

1   invalidated.  Were it so, then only a state's laws which were exactly identical to Nevada's
2   could be selected by a choice-of-law clause. Third, in an analogous case involving NRS
3   § 40.430, which requires the holder of a secured note to first exhaust the security before
4   instituting an action on the note, the Nevada Supreme Court recognized that § 40.453
5   does not preclude a waiver of the rights secured in § 40.430, lending support to this
6   Court's conclusion that the dictates of § 40.453 cannot be so tightly construed. *See*
7   *Nevada Wholesale Lumber Co. v. Myers Realty, Inc.*, 544 P.2d 1204, 1207 (Nev. 1976).
8   As a result, the Court holds that the Texas choice-of-law clause governs, and Texas law
9   applies to this action. The second transfer factor, which favors the state most familiar
10  with the governing law of the dispute, weighs in favor of transfer to Texas.

11        **C.     Remaining Venue Factors**

12        The remaining factors are, save one, either inconclusive on the issue or support
13  transfer to the Northern District of Texas.

14        First, it is not straightforward where the relevant agreements were negotiated and
15  executed. The Note is a Texas instrument, and provides explicitly for suit and jurisdiction
16  in Texas.  As this is the primary agreement that gives rise to this suit, this factor supports
17  transferring the actions to Texas.  BHLT also sues on account of allegedly fraudulent
18  appraisals conducted in Nevada, and seeks recovery for torts in connection to scuttled
19  business relationships it had with California entities. These are ancillary relationships,
20  and do not constitute the "heart" of the parties' dispute, which arises out of the
21  foreclosure and the deficiency judgment sought by BOA.

22        Second, the parties have nontrivial contacts with both fora. As mentioned earlier,
23  the Property is located in Nevada, and foreclosure was conducted pursuant to Nevada
24  law. BHLT's suit against the Appraiser Defendants adds additional connections to
25  Colorado (where Cushman is a registered) and Utah (where Donaldson is a citizen). At
26  the same time, BOA's primary place of business is in Texas, but BOA does maintain
27  business in Nevada as evidenced by the presence of its branches in the state, BHLT has
28  ///

significant Texas contacts, and BHLT's guarantors are Texas entities. On balance, this factor is inconclusive.

Third, the Court finds no substantial difference in the costs of litigating this case either in Nevada or in Texas, or the relative ease of access to sources of proof in either. While the Property is located in Nevada, the evidence that resolves the claims at issue in this litigation are scattered between Nevada, Texas, Utah, and Colorado. In addition, the parties have not made a compelling presentation demonstrating that one venue is more preferable than the other with respect to the availability of compulsory process to compel attendance of unwilling non-party witnesses.

However, Plaintiff's choice of forum favors maintaining this suit in Nevada. The Court notes that this is a declaratory judgment action brought preemptively by BHLT before BOA brought a deficiency action. Nevertheless, the posture of this case weighs in favor of keeping the suit here.

In sum, the factors favor transferring this case to Texas. The most important factor, the controlling case law, weighs heavily in the Court's decision to transfer the case. With the exception of one factor (BHLT's choice of forum), which weighs only slightly in favor of Nevada, all other factors are either inconclusive or favor Texas. The Court therefore concludes that transfer to Texas is appropriate under the circumstances.

The Court is mindful that a transfer to the Northern District of Texas may result in a challenge to that court's jurisdiction over the newly added Appraiser Defendants. However, this fact does not, on its own, counsel against the more important choice-of-law factor that controls the Court's venue determination. As explained above, the heart of this dispute concerns the allegations between BHLT and BOA, not the newly added Defendants. Further, venue in Texas was appropriate at the time the suit was brought, and it is unclear whether BHLT added the Appraiser Defendants only as an attempt to protect against transfer. Lastly, to the extent that BHLT is found to state valid claims for relief against the Appraiser Defendants and jurisdiction over those defendants cannot lie in Texas, BHLT is free to pursue a second action in Nevada, should that be necessary.

1    *See Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618–619 (2d Cir. 1968) (permitting

2    severance of claims where transfer would prevent exercise of personal jurisdiction over a

3    party "peripherally involved in the wrongdoing").

4    **V.    CONCLUSION**

5          The Court notes that the parties made several arguments and cited to several

6    cases not discussed above.  The Court has reviewed these arguments and cases and

7    determines that they do not warrant discussion as they do not affect the outcome of the

8    Motion.

9          IT IS THEREFORE ORDERED that Defendant Bank of America, N.A.'s Motion to

10   Transfer Venue to the United States District Court for the Northern District of Texas,

11   Dallas Division (dkt. no. 3) is GRANTED. The Clerk of the Court is ordered to transfer

12   these two actions to the Northern District of Texas, Dallas Division for further

13   proceedings.

14         DATED THIS 5th day of August 2013.

15

16   _____

17   MIRANDA M. DU
     UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28